## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

DEBRA M. COOPER,                          )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )          Case No. 17-CV-0320-CVE-FHM
                                          )
NORTHWEST ROGERS COUNTY FIRE              )
PROTECTION DISTRICT, JAMES                )
MATHEW SHOCKLEY, in his individual        )
capacity, MEL W. DAINTY, in his individual )
capacity, and NORTHWEST                   )
PROFESSIONAL FIREFIGHTERS                 )
LOCAL NO. 4057,                           )
                                          )
                                          )
                    Defendants.           )

## OPINION AND ORDER

Now before the Court are defendant Northwest Rogers County Fire Protection District's

(District) motion to dismiss (Dkt. # 9), defendant Northwest Professional Firefighters Local No.

4057's (Union) motion to dismiss (Dkt. # 15), and defendants James Mathew Shockley and Mel W.

Dainty's joint motion to dismiss (Dkt. # 29). Each defendant argues that plaintiff has failed to state

a claim upon which relief may be granted. Plaintiff responds that she has sufficiently pled each claim

that she asserts in her petition. Dkt. ## 16, 17, 33.

## I.

Plaintiff was hired as a probationary administrative assistant by the District in January 2012,

and she became a full-time administrative assistant six months later. Dkt. # 3-1, at 8. During

plaintiff's employment, the District had an employee policy manual that begins with following

disclaimer:

Employees of Northwest Rogers County Fire Protection District <u>that are not members of the bargaining unit</u> are employees "at will," which means that the Employee may resign at any time and the employer may discharge an Employee at any time with or without cause. The benefits outlined in this manual are subject to change including elimination, if the Board so determines. These are not conditions of employment and this manual is not a contract of employment. This manual is merely a policy and procedure guide.

<u>Id.</u> at 20. The policy manual also contains a section titled "Steps in Corrective Action." This section identifies four general penalties—oral reprimand, written reprimand, suspension, and dismissal—and states that those penalties "may be assessed against any full-time or part-time employee of the Fire District as disciplinary action although not necessarily in the sequence noted." <u>Id.</u> at 59. The section goes on to state that "[a]ny employee being considered for suspension or dismissal will participate in [a series of hearings]." <u>Id.</u> at 60. The policy manual states that the employee will also have the right to appeal at a meeting of the District's Board of Directors (Board). <u>Id.</u> at 62. Additionally, the policy manual states that the District "will also make contributions to a retirement plan of the Administrative Assistant's choice." <u>Id.</u> at 70.

Plaintiff alleges that in October 2016, she discovered that the District had not been providing her retirement benefits as set out in the policy manual. <u>Id.</u> at 9. Plaintiff asserts that she asked Shockley, the District's Fire Chief, about her benefits and that he told her the issue would have to be placed on the agenda for the next meeting of the Board. <u>Id.</u> Plaintiff's retirement benefits were discussed at the Board's regular meeting in December 2016. <u>Id.</u> Plaintiff alleges that Dainty, Chairman of the Board, was hostile toward plaintiff during the meeting and stated that the policy manual needed to be rewritten. <u>Id.</u> The issue was tabled until the January 2017 meeting, and plaintiff alleges that her retirement benefits were discussed at that meeting in executive session. <u>Id.</u> Plaintiff asserts that she asked for the issue to be tabled for another month so that she could seek legal

counsel. Id. Plaintiff alleges that Dainty and Shockley were hostile, and that the Board refused her request and asked her to leave the room. Id. Plaintiff asserts that after the Board returned to open session, Dainty made a motion to pay plaintiff her retirement benefits effective October 12, 2016, which the Board approved. Id.

On February 7, 2017, the Union submitted a written grievance to Shockley regarding plaintiff's retirement plan. Id. at 71. The Union asserted that by granting plaintiff's request for retirement benefits, the Board had given plaintiff an 8.35% increase in wages. Id. The Union stated the following regarding plaintiff's retirement benefits:

> We feel this is grossly unfair. [The Union] has been told since 2014 there [are] no available funds in the M & O budget that can be committed to recurring wages. Yet since that time, the administrative assistant has received a $.50 per hour raise, been allowed to participate in the [supplemental retirement plan for which the Union negotiated], received the same bonus as firefighters, and now has an 8.35% increase in wages. It is now the highest paying position in the department other than the Chief, and enjoys all the perks of being a firefighter and union member while being neither.

Id. To resolve its grievance, the Union asked for the Board to rescind plaintiff's 8.35% increase or increase the firefighters' pay by 8.35%. Id.

On February 13, 2017, the Board held a special meeting at which plaintiff was fired in executive session. Id. at 10. Plaintiff asserts that the reason given by the Board at the time for her termination was "audit results." Id. Plaintiff also asserts that prior to February 2017, she had been exposed to mold at the District's building and suffered from medical problems such as bronchitis, headaches, and difficulty breathing due to mold exposure. Id. Plaintiff alleges that Shockley and Dainty knew of plaintiff's mold exposure and resulting health problems. Id. Plaintiff asserts that at the meeting where she was terminated, she was asked to leave before the mold issue was discussed. Id.

Plaintiff filed this suit in Rogers County District Court, asserting federal claims under 42 U.S.C. § 1983, as well as claims under Oklahoma law for breach of contract, malicious interference with a contractual relationship, intentional infliction of emotional distress, and declaratory relief and a permanent injunction pursuant to the Oklahoma Open Meeting Act, Okla. Stat. tit. 25, § 301 et seq. (OOMA). Dkt. # 3-1, at 11-19. Plaintiff attached excerpts from the policy manual and a copy of the Union's written grievance to her petition. See id. at 20-72. The District removed the case to this Court, see Dkt. # 3, and now defendants argue that all of plaintiff's claims should be dismissed for failure to state a claim. See Dkt. ## 9, 15, 29.

## II.

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007);

Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991). Finally, "the 12(b)(6) standard does not require that [p]laintiff establish a prima facie case in her complaint, [but] the elements of each alleged cause of action help to determine whether [p]laintiff has set forth a plausible claim." Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012) (citations omitted).

### III.

Plaintiff asserts the following claims: (1) breach of contract against the District; (2) malicious interference with a contractual relationship against the Union; (3) a procedural due process claim under § 1983 against the District, Dainty, and Shockley; (4) a gender discrimination claim under § 1983 against the District, Dainty, and Shockley; (5) a due process liberty interest claim under § 1983 against Dainty and Shockley; (6) malicious interference with a contractual relationship against Dainty and Shockley; (7) intentional infliction of emotional distress against Dainty and Shockley; and (8) a request for declaratory relief and permanent injunction against the District pursuant to OOMA. Dkt. # 3-1, at 11-19. Defendants argue that plaintiff has failed to state any claim against them. See Dkt. ## 9, 15, 29.

### A.

Plaintiff alleges that she and the District had an implied contract based on the employee policy manual and that the District breached the implied contract by failing to provide her retirement benefits and follow certain procedures prior to terminating her employment. Dkt. # 16, at 3-4. The

District argues that plaintiff was an at-will employee and that the policy manual did not create an implied contract because it contained a clear disclaimer stating that it did not create an employment contract. Dkt. # 9, at 8.

To prevail on a breach of contract claim under Oklahoma law, a plaintiff must prove: "(1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach." Digital Design Grp., Inc. v. Info. Builders, Inc., 24 P.3d 834, 844 (Okla. 2001). A contract may be express or implied. See Jones v. Univ. of Cent. Okla., 910 P.2d 987, 989 (Okla. 1995). "[A]n employee handbook may form the basis of an implied contract between an employer and its employees if four traditional contract requirements exist: (1) competent parties, (2) consent, (3) a legal object and (4) consideration." Russell v. Bd. of Cnty. Comm'rs, Carter Cnty., 952 P.2d 492, 501-02 (Okla. 1997) (footnote omitted). An employer may disclaim any intent to create an employment contract, but the disclaimer must be clear. Id. at 502. An employer's conduct that is inconsistent with the disclaimer may negate the disclaimer's effect, and "[t]he efficacy of a disclaimer is generally a mixed question of law and of fact." Id.

The District's policy manual contains a clear disclaimer of intent to create a contract. The disclaimer is the first paragraph in the manual and states the following:

> Employees of Northwest Rogers County Fire Protection District that are not members of the bargaining unit are employees "at will," which means that the Employee may resign at any time and the employer may discharge an Employee at any time with or without cause. The benefits outlined in this manual are subject to change including elimination, if the Board so determines. These are not conditions of employment and this manual is not a contract of employment. This manual is merely a policy and procedure guide.

Dkt. # 3-1 at 20. Plaintiff does not allege that she was a member of the bargaining unit. The disclaimer states in unambiguous language that employees who are not a part of the bargaining unit

are at-will, explains that they can be discharged at any time without cause, and specifies that the manual is a "policy and procedure guide," not a contract. This disclaimer is very similar to the disclaimers found to be clear and unambiguous in Bowen v. Income Producing Management of Oklahoma, Inc., 202 F.3d 1282, 1285 (10th Cir. 2000) (applying Oklahoma law), and Avey v. Hillcrest Medical Center, 815 P.2d 1215, 1216 (Okla. Civ. App. 1991).

Plaintiff argues that, although the policy manual states that she was an at-will employee, her at-will status is negated throughout. Dkt. # 16, at 5. Specifically, plaintiff asserts that the language in the policy manual is mandatory regarding her benefits and the disciplinary procedures and that that language "overshadows" the disclaimer at the beginning of the manual. Id. The policy manual uses definite language to describe plaintiff's benefits and the disciplinary procedures. See Dkt. # 3-1, at 60 ("Any employee being considered for suspension or dismissal will participate in the following Hearings."); id. at 70 ("[The District] will also make contributions to a retirement plan of the Administrative Assistant's choice."). However, this language alone does not negate the clear disclaimer.

A disclaimer may be negated by an employer's conduct that is inconsistent with the disclaimer. See Bowen, 202 F.3d at 1285 ("'[A]n employer may deny (or disclaim) any intent to make the provisions of a personnel manual part of an employment relationship' so long as the disclaimer is clear and the employer's conduct does not negate the disclaimer's effect." (quoting Russell, 952 P.2d at 502)); see also Miner v. Mid-Am. Door Co., 68 P.3d 212, 222 (Okla. Civ. App. 2002); Gabler v. Holder & Smith, Inc., 11 P.3d 1269, 1275 (Okla. Civ. App. 2000); Selfridge v. Dollar Gen. Corp., Inc., 9 P.3d 695, 698 (Okla. Civ. App. 2000). In determining whether a disclaimer is effective, Oklahoma courts consider mandatory language in the employee handbook,

but consideration of the handbook language is always done in conjunction with consideration of the employer's conduct. For example, in Russell, the Oklahoma Supreme Court held that it could not determine the effectiveness of a disclaimer in an employee handbook where the manual used "shall" language and the employer implied the manual was mandatory through its conduct. 952 P.2d at 503.

The language in the policy manual that plaintiff "will" receive certain benefits and a certain disciplinary procedure "will" be followed is not sufficient to create a reasonable belief that the manual was the basis for an implied contract where the manual also has a clear and prominent statement disclaiming any intent to form a contract and declaring plaintiff an at-will employee who may be terminated at any time without cause. Plaintiff does not allege that the disclaimer was negated by the District's conduct and relies solely on the policy manual to support her claim. Therefore, the Court finds that plaintiff has failed to allege facts that could support finding that the policy manual's disclaimer was ineffective. Because the disclaimer is effective, plaintiff has failed to allege a contract was formed and her breach of contract claim (count one) fails.

**B.**

Plaintiff alleges claims against the Union (count two) and Dainty and Shockley (count six) for malicious interference with a contractual relationship. Under Oklahoma law, the elements of a claim for malicious interference with a contractual relationship are: "(1) interference with a business or contractual right; (2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and (3) damage proximately sustained as a result of the interference." Tuffy's, Inc. v. City of Okla. City, 212 P.3d 1158, 1165 (Okla. 2009).

**i.**

Dainty and Shockley argue that plaintiff's claim for malicious interference with a contractual relationship against them (count six) fails because plaintiff did not have an employment contract with the District. Dkt. # 29, at 10. The Court has already determined that plaintiff has failed to allege an implied contract with the District on the basis of the employee policy manual. See supra section III.A. However, although the Oklahoma Supreme Court has not addressed the issue, the Oklahoma Court of Civil Appeals has held that an at-will contract of employment can form the basis for a malicious interference with a contractual relationship claim. See McNickle v. Phillips Petroleum Co., 23 P.3d 949, 951 (Okla. Civ. App. 1999) ("In the evolution of the tort of interference with the employment contractual relationship in Oklahoma, there is nothing to suggest that the tort would not apply in cases of interference with an at-will contract of employment when the party interfering acts without privilege."); see also Fulton v. People Lease Corp. 241 P.3d 255, 264 (Okla. Civ. App. 2010). The Court has found no decision of the Oklahoma Supreme Court to indicate that it would disagree with the Oklahoma Court of Civil Appeals on this issue. Moreover, several federal district courts have determined that an at-will employee may state a claim for malicious interference with a contractual relationship, relying on the decisions of the Oklahoma Court of Civil Appeals. See, e.g., Janzen v. Watonga Hosp. Tr. Auth., No. CIV-11-70-D, 2011 WL 5415329, at *7-8 (W.D. Nov. 8, 2011); Goff v. Hukill, No. 08-CV-71-TCK-FHM, 2010 WL 2595785, at *7 (N.D. Okla. June 24, 2010); Henderson v. Choctaw Cnty. City of Hugo Hosp. Auth., No. CIV-09-125-KEW, 2010 WL 2104670, at *4 (E.D. Okla. May 25, 2010); see also Harman v. Okla. ex rel. N. Okla. Bd. of Regents, No. CIV-07-327-C, 2007 WL 1674205, at *3 (W.D. Okla. June 7, 2007) (holding that an at-will employee can bring a claim for intentional interference with a prospective economic advantage); N.

Am. Ins. Agency, Inc. v. Bates, No. CIV-12-544-M, 2013 WL 6150781, at *10 (W.D. Okla. Nov. 22, 2013) (same).

The Court will follow the Oklahoma Court of Civil Appeals and find that an at-will employment relationship can form the basis for a claim of malicious interference with a contractual relationship. Plaintiff has alleged that Dainty and Shockley intentionally and wrongfully interfered with her employment relationship with the District and that she was fired as a result of that interference. Dkt. # 3-1, at 17. Under Oklahoma law, plaintiff has sufficiently alleged a claim for malicious interference with a business relationship.

Dainty and Shockley also argue that plaintiff's claim for malicious interference against them fails because, as agents of the District, they are parties to the business relationship between plaintiff and the District. Dkt. # 29, at 18. A malicious interference claim "is viable only if the interferor is not a party to the contract or business relationship." Wilspec Tech., Inc. v. DunAn Holding Grp., Co., 204 P.3d 69, 74 (Okla. 2009) (citing Voiles v. Santa Fe Minerals, Inc., 911 P.2d 1205, 1209 (Okla. 1996)). A defendant cannot be held liable for interfering with a contract if he was acting in a representative capacity for a party to that contract. Voiles, 911 P.2d at 1210. However, an employee's "interference with [an employer's] contract will be privileged only when the interference is undertaken in good faith and for a bona fide organizational purpose." Martin v. Johnson, 975 P.2d 889, 896 (Okla. 1998) (quoting Mason v. Okla. Turnpike Auth., 115 F.3d 1442, 1453 (10th Cir. 1997)); see also id. at 896-97 ("If an employee acts in bad faith and contrary to the interests of the employer in tampering with a third party's contract with the employer we can divine no reason that the employee should be exempt from a tort claim for interference with contract."). Plaintiff alleges that Dainty and Shockley acted in bad faith and against the interests of the District by interfering

with her employment relationship. Dkt. # 3-1, at 17. Plaintiff further alleges that Dainty and Shockley interfered for the purposes of concealing their allegedly unlawful conduct, retaliating against plaintiff, and harassing her. Id. Thus, plaintiff has stated a claim for malicious interference with a business relationship against Dainty and Shockley (count six).

**ii.**

The Union argues that plaintiff has failed to state a claim against it in count two because its actions were privileged. Dkt. # 15, at 2-5. The Union asserts that the grievance it filed regarding plaintiff is protected by the First Amendment and Okla. Stat. tit. 19, §§ 901.30 to 901.30-9, Oklahoma's statutes regarding collective bargaining in fire protection districts. The gist of the Union's argument is that because it has the right to file grievances, it cannot be held liable for interfering with a nonmember's employment relationship through its grievances. The Union does not cite any authority that supports this proposition. Instead, it cites to NLRB v. Whiting Milk Corp., 342 F.2d 8, (1st Cir. 1965), which held that it was not discrimination against nonmember employees for a union to bargain for and obtain a benefit for only member employees. Id. at 11. Plaintiff's claim is not based on the Union bargaining for or obtaining a benefit for its members; plaintiff's claim arises from the Union asking the District to take away plaintiff's retirement benefits. The Union does not cite, and the Court cannot find, any authority to support the argument that the Union is generally shielded from tort liability for filing grievances or that the Union's request to eliminate plaintiff's retirement benefits is specifically privileged.

The Union also argues that plaintiff's allegations against it are conclusory. Plaintiff alleges that the Union filed a grievance asking the District to rescind her retirement benefits and that, as a result of the grievance, her retirement benefits were withheld and her employment was terminated.

Plaintiff attached a copy of the grievance to her petition and alleged that the Union's interference was not justifiable, excusable, reasonable, or privileged. Dkt. # 3-1, at 12-13. Plaintiff's allegations are not replete with details, but they are certainly enough to raise a right to relief above the speculative level. Therefore, the Court finds that plaintiff has stated a claim for malicious interference with a business relationship against the Union (count two).

## C.

Plaintiff asserts the following claims under § 1983: (1) a procedural due process claim against the District, Dainty, and Shockley (count three), (2) a due process liberty interest claim against Dainty and Shockley (count five), and (3) a gender discrimination claim against the District, Dainty, and Shockley (count four). Section 1983 provides a claim for relief against state actors for violation of a plaintiff's federal rights. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007). None of the defendants argues that the "under color of state law" prong has not been met. The District, Dainty, and Shockley argue that each of plaintiff's § 1983 claims fail because she has not alleged a violation of a right secured by the Constitution or laws of the United States.

### i.

The District, Dainty, and Shockley argue that plaintiff's procedural due process claim against them (count three) fails because plaintiff does not allege a property interest. Procedural due process "ensures that a state will not deprive a person of life, liberty or property unless fair procedures are

used in making that decision." Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998). Determining whether a plaintiff's right to procedural due process has been violated is "a two-step inquiry: (1) Did the individual posses a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" Id. (citing Watson v. Univ. of Utah Med. Ctr., 75 F.3d 569, 577 (10th Cir. 1996)). Property interests are not created by the Constitution, but arise from independent sources such as state law. Farthing v. City of Shawnee, Kan., 39 F.3d 1131, 1135 (10th Cir. 1994) (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 571 (1972)). "A public employee . . . must have a 'legitimate claim of entitlement' to continued public employment for a property interest to arise; a 'unilateral expectation' of continued public employment is not sufficient to create a property interest." Kingsford v. Salt Lake City Sch. Dist., 247 F.3d 1123, 1128 (10th Cir. 2001).

Plaintiff argues that she alleged a reasonable expectation of continued employment due to her implied contract with the District based on the employee policy manual. Dkt. # 16, at 6; Dkt. # 33, at 10. But the Court has already found that the disclaimer of intent to create a contract in the manual is effective and plaintiff has not alleged an implied contract. See supra section III.A. Moreover, the policy manual clearly states that plaintiff was an at-will employee that could be terminated without cause at any time. Dkt. # 3-1, at 20. That plaintiff was an at-will employee is bolstered by Oklahoma law, which states that employment contracts of indefinite duration are terminable-at-will. Burk v. K-Mart Corp., 770 P.2d 24, 26 (Okla. 1989). "At-will employees lack a property interest in continued employment." Darr v. Town of Telluride, Colo., 495 F.3d 1243, 1252 (10th Cir. 2007) (citing Bishop v. Wood, 426 U.S. 341, 345 n.8, 345-47 (1976)). Because

plaintiff has failed to allege a property interest, her procedural due process § 1983 claim against the District, Dainty, and Shockley (count three) fails.

**ii.**

Plaintiff alleges that Dainty and Shockley deprived her of her liberty interest (count five) in her good name and reputation without due process by terminating her and publically stating that the reason was a bookkeeping error that resulted in a $200,000 discrepancy. Dkt. # 3-1, at 16. A public employee has a liberty interest in her good name and reputation as they relate to her continued employment.[1] McDonald v. Wise, 769, F.3d 1202, 1212 (10th Cir. 2014).

> The government infringes upon that interest when: (1) it makes a statement that "impugn[s] the good name, reputation, honor, or integrity of the employee"; (2) the statement is false; (3) the statement is made during the course of termination and "foreclose[s] other employment opportunities"; and (4) the statement is published, in other words disclosed publically.

Id. (quoting Workman v. Jordan, 32 F.3d 475, 481 (10th Cir. 1994)) (alterations in original). Dainty and Shockley argue that plaintiff's claim fails because she does not allege that their statements regarding the bookkeeping error were false. Dkt. # 29, at 26. The petition alleges that the bookkeeping error was not the true reason for plaintiff's termination, see Dkt. # 3-1, at 10, and that Dainty and Shockley publicized the bookkeeping error as the basis for firing her, id. at 16. But the petition never asserts that Dainty and Shockley's statements regarding the bookkeeping error were false. Even in her response to Dainty and Shockley's motion to dismiss, plaintiff does not assert that

---

[1]     The existence of a liberty interest in an employee's good name and reputation is not dependent on the existence of a property interest in her continued employment. See McDonald v. Wise, 769 F.3d 1202, 1212 n.2 (10th Cir. 2014). Thus, plaintiff's claim is not foreclosed because she was an at-will employee. See id.

the statements were false. To assert a liberty interest in her good name and reputation, plaintiff must allege that the statements were false, and she has failed to do so.

Plaintiff also asserts that Dainty and Shockley violated her liberty interest in her good name and reputation by asking her to leave the February 2017 special meeting of the Board because it "implie[d] criminal conduct." Dkt. # 33, at 13. Plaintiff does not explain how asking her to leave the meeting after she had been terminated created the impression that she had engaged in criminal conduct when plaintiff does not allege that anyone stated she committed any crime. Plaintiff must state a claim that is plausible on its face, and it is not plausible that asking her to leave a meeting impugned her good name, reputation, honor, or integrity. Thus, plaintiff's due process liberty interest § 1983 claim against Dainty and Shockley (count five) fails.

### iii.

Plaintiff alleges that the District, Dainty, and Shockley discriminated against her based on her gender (count four). Dkt. # 3-1, at 14-15. The elements of a discrimination lawsuit are the same whether brought pursuant to § 1983 or Title VII. Hutchinson v. City of Okla. City, 919 F. Supp. 2d 1163, 1179 (W.D. Okla. 2013) (citing Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991)). As plaintiff alleges no direct evidence of gender discrimination, the Court evaluates her claim according to the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). See Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008).

> Under the McDonnell Douglas framework, the plaintiff must carry the initial burden under the statute of establishing a prima facie case of [discrimination or retaliation]. Once the plaintiff has established a prima facie case, [t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for its employment action. If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual.

Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000) (second alteration in original) (internal quotation marks and citations omitted). To state a prima facie case of discrimination, a plaintiff must allege: (1) that the plaintiff belongs to a protected class; (2) that the plaintiff suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. EEOC v. PVNF, L.L.C., 487 F.3d 790, 800 (10th Cir. 2007). Regarding whether plaintiff has sufficiently alleged that the challenged action took place under circumstancing giving rise to an inference of discrimination, "[o]ne method by which a plaintiff can demonstrate an inference of discrimination is to who that the employer treated similarly situated employees more favorably." Luster v. Vilsack, 667 F.3d 1089, 1095 (10th Cir. 2011).

The District, Dainty, and Shockley argue that plaintiff has failed to state a prima facie case of gender discrimination because she has failed to show that her termination was the result of gender discrimination. Dkt. # 9, at13-16; Dkt. # 29, at 23-26. The District, Dainty, and Shockley conflate evidentiary standards with pleading standards. The Supreme Court addressed the requirements for a plaintiff to survive a motion to dismiss in a discrimination case in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). In Swierkiewicz, the district court dismissed the plaintiff's complaint for failure to adequately allege a prima facie case of discrimination, and the Second Circuit affirmed. Id. at 509. The Supreme Court reversed, holding that a plaintiff need not plead a prima facie case to survive a motion to dismiss. Id. at 515. The Swierkiewicz Court explained that the McDonnell

Douglas framework "is an evidentiary standard, not a pleading requirement," and Rule 8(a) establishes the federal pleading requirements.[2] Id. at 511, 514.

To survive a Rule 12(b)(6) motion to dismiss, plaintiff must allege enough "facts to state a claim to relief that is plausible on its face," and her factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Plaintiff has met that burden here. She alleges that she is a female who was terminated in violation of the procedure set out in the District's written employee policy manual, and that the manual was followed when terminating male employees. Dkt. # 3-1, at 15. Plaintiff also alleges that all male employees received the retirement benefit that she did not get, even though the policy manual stated she would receive it. Id. Plaintiff's allegations are not conclusory and are sufficient to state a plausible claim of gender discrimination. The arguments made by the District, Dainty, and Shockley regarding the union-member status of the male employees and the District's allegedly legitimate non-discriminatory reason for terminating plaintiff would be properly raised in a motion for summary judgment, as they rely on facts not contained in the petition. Thus, the motions to dismiss will be denied as to plaintiff's claim against the District, Dainty, and Shockley for gender discrimination pursuant to § 1983 (count four).

**D.**

Plaintiff alleges a claim for intentional infliction of emotional distress against Dainty and Shockley (count seven). Dkt. # 3-1, at 17-18. Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage. See Gaylord Entm't

---

[2]    Swierkiewicz is a pre-Twombly case, but its holding still stands. As the Tenth Circuit stated post-Twombly, "Rule 8(a)(2) still lives," and "the [Rule] 12(b)(6) standard does not require that [the plaintiff] establish a prima facie case in her complaint." Khalik, 671 F.3d at 1191-92.

Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998). This action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46. Id. In Breeden v. League Services Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376 (quoting Restatement (Second) of Torts § 46 cmt. d.). "To recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Schovanec v. Archdiocese of Okla. City, 188 P.3d 158, 175 (Okla. 2008) (quoting Computer Pubs., Inc. v. Welston, 49 P.3d 732, 735 (Okla. 2002)). Under Oklahoma law, the trial court must assume a "gatekeeper role" and make an initial determination that the defendant's conduct "may reasonably be regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue v. United States, 397 F.3d 840, 856 n.7 (10th Cir. 2005) (applying Oklahoma law).

Dainty and Shockley argue that plaintiff has failed to state a plausible claim for intentional infliction of emotional distress. The Court agrees. Plaintiff does not point to any specific conduct of Dainty or Shockley that she believes is outrageous in either the petition or her response brief. The petition alleges that Dainty and Shockley were hostile to plaintiff during the January and February 2017 Board meetings, discriminated against her, terminated her employment, asked her to leave a

public meeting, acted intentionally and maliciously, and were motivated by a desire to obscure their unlawful conduct. See generally Dkt. # 3-1. A plaintiff has stated a claim for intentional infliction of emotional distress under Oklahoma law only where the alleged conduct is extreme and truly outrageous, and such a standard is rarely met in workplace harassment cases. See Computer Pubs., 49 P.3d at 736 (claim should have been submitted to a jury when plaintiff presented evidence that harassment lasted more than two years and caused plaintiff to quit her job, move, and repeatedly change phone numbers); Miner v. Mid-America Door Co., 68 P.3d 212 (Okla. Civ. App. 2002) (employer's alleged failure to reassign the plaintiff after learning of workplace harassment, even if unreasonable, was not extreme and outrageous); Gabler v. Holder & Smith, Inc., 11 P.3d 1269 (Okla. Civ. App. 2000) (noting that workplace harassment rarely rises to the level of extreme and outrageous conduct); Mirzaie v. Smith Cogeneration, Inc., 962 P.2d 678 (Okla. Civ. App. 1998) (employer's conduct was not extreme and outrageous when, inter alia, the plaintiff's manager made derogatory sexual remarks about the plaintiff, woke plaintiff up in the middle of the night to do unnecessary work, and terminated him two hours before his wedding); Zahorsky v. Community Nat'l Bank of Alva, 883 P.2d 198 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress when an employee forced the plaintiff to have sex with him and employer failed to fire the employee, even though the employer allegedly knew about the conduct).

Plaintiff's allegations regarding Dainty and Shockley's conduct simply does not come close to the level of harassment that would be required to state a claim of intentional infliction of emotional distress under Oklahoma law. Thus, plaintiff has failed to state a plausible claim for intentional infliction of emotional distress, and Dainty and Shockley's motion to dismiss will be granted as to that claim (count seven).

**E.**

Plaintiff seeks declaratory and injunctive relief against the District under the OOMA (count eight). Dkt. # 3-1, at 18-19. The OOMA mandates that certain procedures be followed when holding a meeting of a public body. Any action taken in willful violation of the OOMA is invalid. Okla. Stat. tit. 25, § 313. The District does not dispute that it is a public body subject to the OOMA. The District argues that plaintiff does not have a private right of action to bring a claim under the OOMA because she is not a member of the general public. Dkt. # 9, at 16-17. The District's argument relies on <u>Rabin v. Bartlesville Redevelopment Trust Authority</u>, 308 P.3d 191 (Okla. Civ. App. 2013), which held that the general public has an implied private right of action under the OOMA. <u>Id.</u> at 194. The District argues that, as an employee of the District, plaintiff is not a member of general public. However, in 2014 the Oklahoma legislature amended the OOMA to add an explicit right of action. The statute now states that "following a violation of [the OOMA], any person . . . [m]ay bring a civil suit for declaratory or injunctive relief, or both." Okla. Stat. tit. 25, § 314(B). Plaintiff is a person, and therefore, she has a private right of action under the OOMA to file suit against the District for declaratory and injunctive relief.

The District also argues that plaintiff has failed to state a claim under the OOMA because she does not assert that the District's alleged violations of the statute were willful. Dkt. # 9, at 17. The OOMA requires that "any vote or action on any item of business considered in an executive session . . . be taken in public meeting with the vote of each member publicly cast and recorded." Okla. Stat. tit. 25, § 307(E)(3). Plaintiff alleges that the members of the Board decided in advance of the February meeting to terminate plaintiff, and that her termination was conducted entirely in executive session. Dkt. # 3-1, at 18. Plaintiff also alleges that the District intentionally kept her from

knowing whether her position would be discussed at the February meeting by waiting until she left work before posting the meeting agenda and twice refusing to give her a copy of the agenda when she asked for one.[3] Id. at 10.

Construing plaintiff's allegations in the light most favorable to her, plaintiff has stated a plausible claim under the OOMA. Although she does not use the word "willful," she has stated a claim for a willful violation of the OOMA. Willfulness, in the context of the OOMA, "does not require a showing of bad faith, malice, or wantonness, but rather, encompasses conscious, purposeful violations of the law or blatant or deliberate disregard of the law by those know, or should know the requirements of the Act." Rogers v. Excise Bd. of Greer Cnty., 701 P.2d 754, 761 (Okla. 1984). Plaintiff's allegations that the agenda was intentionally hidden from her, that the Board decided before the meeting that she was to be terminated, and that the Board terminated her in executive session are sufficient to state a claim for willful violation of the OOMA (count eight).

**IT IS THEREFORE ORDERED** that defendant Northwest Rogers County Fire Protection District's motion to dismiss (Dkt. # 9) is **granted in part and denied in part**; it is granted as to plaintiff's breach of contract claim (count one) and § 1983 procedural due process claim (count three), and denied as to plaintiff's § 1983 gender discrimination claim (count four) and her request for declaratory and injunction relief pursuant to the OOMA (count eight).

**IT IS FURTHER ORDERED** that defendant Northwest Professional Firefighters Local No. 4057's motion to dismiss (Dkt. # 15) is **denied**.

---

[3]     The OOMA requires all meetings of public bodies to "be preceded by advance public notice specifying the time and place of each such meeting to be convened as well as the subject matter or matters to be considered at such meeting." Okla. Stat. tit. 25, § 303.

**IT IS FURTHER ORDERED** that defendants James Mathew Shockley and Mel W. Dainty's joint motion to dismiss (Dkt. # 29) is **granted in part and denied in part**; it is granted as to plaintiff's § 1983 procedural due process claim (count three), § 1983 due process liberty interest claim (count five), and intentional infliction of emotion distress claim (count seven), and denied as to plaintiff's § 1983 gender discrimination claim (count four) and malicious interference with a contractual relationship claim (count six).

To summarize: count two remains pending against the Union; count four remains pending against the District, Dainty, and Shockley; count six remains pending against Dainty and Shockley; count eight remains pending against the District. Counts one, three, five, and seven are dismissed.

**DATED** this 28th day of August, 2017.

Claire V Eagl

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE