# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DEBRA M. COOPER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-0320-CVE-FHM |
| | ) | |
| NORTHWEST ROGERS COUNTY FIRE | ) | |
| PROTECTION DISTRICT, JAMES | ) | |
| MATHEW SHOCKLEY, MEL W. DAINTY, | ) | |
| and NORTHWEST | ) | |
| PROFESSIONAL FIREFIGHTERS | ) | |
| LOCAL NO. 4057, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court are defendant Northwest Professional Firefighters Local No. 4057's (Union) motion for summary judgment (Dkt. # 44), and defendants Northwest Rogers County Fire Protection District (District), James Mathew Shockley, and Mel W. Dainty's joint motion for summary judgment (Dkt. # 46).

## I.

The following facts are undisputed for purposes of summary judgment: the District employed plaintiff, Debra M. Cooper, a female, as its sole administrative assistant from January 2012 through her termination in February 2017. Dkt. # 3-1, at 8. Plaintiff had a clerical job classification, and the fire chief supervised her. Id. at 26, 48. When plaintiff was terminated, Shockley was the District's fire chief. Id. at 7. At all times relevant to this action, Dainty was chairman of the District's five-person board of directors. Id. As fire chief, one of Shockley's duties is to recommend termination

of employees. Dkt. # 47-1, at 1. And the board approves or denies the fire chief's recommendations upon majority vote. Id.; Dkt. # 47-2, at 1.

In 2015, the District dismissed David Puckett, its former fire chief, for embezzlement. Dkt. # 47-1, at 2. Puckett had a firefighter job classification, and the board of directors supervised him. Id. In February 2017, the District dismissed Matt Marlin, a firefighter, for destruction of property. Id. Marlin had a firefighter job classification, and the shift captain supervised him. Id.

Between the time plaintiff started working for the District and October 2016, the District's firefighters received a 3% pension increase. Dkt. # 47-3, at 41. Plaintiff was the District employee responsible for submitting retirement contribution information to the firefighters' pensions. Dkt. # 47-4, at 3. In October 2016, when she noticed that she had not received the same increase, she notified Shockley, who presented the issue to the board. Id. At its January 2017 meeting, the board approved the increased retirement benefit plaintiff sought, effective from October 2016. Dkt. # 47-5, at 9.

During the course of her employment, plaintiff took over responsibility for payroll taxes for the District, and received a raise for taking on this responsibility. Dkt. # 47-3, at 43. In 2015, the District received a report from an independent auditor, stating that the "District's payroll tax and payroll liabilities accounts were not reconciled and required material adjusting journal entries at year end." Dkt. # 47-7, at 3. On January 25, 2017, the District's certified public accountant emailed Shockley with a draft report for the 2016 audit. Dkt. # 47-6, at 2-3. The report stated, inter alia,

> CONDITION: The District's payroll tax and payroll liabilities accounts were not reconciled and required material adjusting journal entries at year end. In addition, the District has not paid their [sic] Oklahoma withholding taxes in accordance with State law . . . . [...]

> CAUSE OF CONDITION: The District's accounting staff lacks the necessary skill and knowledge to reconcile the account balances. [...]
>
> RECOMMENDATION: The District should consider outsourcing its payroll functions to a qualified payroll processor.

Id. at 16. Upon receiving the draft report, in late January 2017, Shockley told Dainty that he felt it was "time to make a change and to get a new, more competent Administrative Assistant." Dkt. # 47-1, at 2. On January 31, 2017, after hearing Shockley's recommendation, Dainty contacted an employment attorney to "discuss plaintiff's situation." Dkt. # 47-2, at 1; Dkt. # 47-8.

On February 7, 2017, the Union presented a grievance to Shockley, asking the District to rescind plaintiff's pension increase or provide the same increase to all firefighters. Dkt. # 47-1, at 1; Dkt. # 60-1. According to Shockley, he never submitted the grievance to the board, as plaintiff was terminated before the deadline for taking action on a Union grievance. Dkt. # 47-1, at 1-2.

On February 13, 2017, the board met in executive session to discuss plaintiff's employment. Dkt. # 47-5, at 11. The board then returned to regular session and voted to terminate plaintiff "due to audit results." Id.

On April 26, 2017, plaintiff filed her petition in the District Court of Rogers County, State of Oklahoma, asserting the following claims: breach of contract against the District (count one); malicious interference with a contractual relationship against the Union (count two); a procedural due process claim under 42 U.S.C. § 1983 (§ 1983) against the District, Dainty, and Shockley (count three); a gender discrimination claim under § 1983 against the District, Dainty, and Shockley (count four); a due process liberty interest claim under § 1983 against Dainty and Shockley (count five); malicious interference with a contractual relationship against Dainty and Shockley (count six); intentional infliction of emotional distress against Dainty and Shockley (count seven); and a request

3

for declaratory relief and permanent injunction against the District pursuant to the Oklahoma Open Meeting Act, Okla. Stat. tit. 25, § 301 et seq. (OOMA) (count eight). Dkt. # 3-1, at 11-19. The District removed the case to this Court. Dkt. # 3. In an earlier Opinion and Order, this Court dismissed counts one and three against the District and counts three, five, and seven against Shockley and Dainty. Dkt. # 38.

Plaintiff's remaining claims are: malicious interference with a contractual relationship against the Union (count two); gender discrimination under § 1983 against the District, Dainty, and Shockley (count four); malicious interference with a contractual relationship against Dainty and Shockley (count six); and request for declaratory relief and permanent injunction against the District pursuant to OOMA (count eight). The Union has filed a motion for summary judgment on the count remaining against it (Dkt. # 44), and the District, Dainty, and Shockley have filed a joint motion for summary judgment on the counts remaining against them (Dkt. # 46).

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

The District, Dainty, and Shockley argue that they are entitled to summary judgment on plaintiff's claim for gender discrimination under § 1983 (count four) because plaintiff cannot establish that her termination took place under circumstances giving rise to an inference of discrimination (by, for example, demonstrating that similarly situated male employees were treated more favorably). Dkt. # 47, at 13. And even if she could, defendants argue further, the District terminated plaintiff due to the negative 2016 audit results—i.e. for a legitimate, non-discriminatory reason—and plaintiff has failed to establish that this justification is pretextual. Dkt. # 63, at 17-19. In response, plaintiff states,

Here, Plaintiff has met her burden and the Board led by Dainty terminated her. The same process set forth in the handbook was used and the fact that the other employees were union employees is not significant to negate the dissimilar treatment. The Chief recommends termination and the Board acts. Here, two male employees committed more serious transgressions. Puckett embezzled money from the District and Marlin destroyed property belonging to the District. Both terminations of the male employees took to effect [sic] and applied the hand book. Puckett had his termination delayed so his retirement could vest and with Marlin the District agreed that it would not contest his unemployment. Here, the District moved quickly with termination and went straight to termination and challenged Plaintiff's unemployment. Marlin was terminated the same day as Plaintiff and was not terminated in Executive Session, was not escorted from the premises and was not told to leave. Further, the false statements to the [Oklahoma Employment Security Commission] are evidence of pre-text. Also, the firefighters most of whom were male, received the benefit Plaintiff finally started to receive. Plaintiff was told "the guys" were mad. The discipline policy applies to all employees under section 3001. In both instances the Chief recommends termination and the Board approves of it. Progressive discipline was completely bypassed as to Plaintiff.

Dkt. # 58, at 15-16.

The elements of a discrimination lawsuit are the same whether brought pursuant to § 1983 or Title VII. Hutchinson v. City of Okla. City, 919 F. Supp. 2d 1163, 1179 (W.D. Okla. 2013) (citing Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991)). As plaintiff alleges no direct evidence of gender discrimination, the Court evaluates her claim according to the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). See Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). Under the McDonnell Douglas framework,

the plaintiff must carry the initial burden . . . of establishing a prima facie case of [discrimination].  Once the plaintiff has established a prima facie case, the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for its employment action.  If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual.

Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000) (internal quotation marks and citations omitted). To establish a prima facie case of discrimination, a plaintiff must show

that: (1) the plaintiff belongs to a protected class; (2) she suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. EEOC v. PVNF, L.L.C., 487 F.3d 790, 800 (10th Cir. 2007). "One method by which a plaintiff can demonstrate an inference of discrimination is to show that the employer treated similarly situated employees more favorably." Luster v. Vilsack, 667 F.3d 1089, 1095 (10th Cir. 2011).

Plaintiff, a female, belongs to a protected class, and her termination was an adverse employment action. But she fails to establish that the District terminated her under circumstances giving rise to an inference of discrimination. Plaintiff's argument is merely an assemblage of allegations that are irrelevant, unsupported by the evidence, or both. Not only does her argument contain no citations to the record, but also the vast majority of the allegations within her argument are not discussed or supported within her statement of "Disputed Material Facts Precluding Summary Judgment" (or anywhere else in her filings). Dkt. # 58, at 3-9, 15-16.[1] Moreover, even assuming, arguendo, that plaintiff were able to establish a prima facie case of discrimination, defendants have explained, and corroborated their explanation with credible evidence, that the

---

[1]     For example, plaintiff provides no evidentiary support for her claims that "Puckett had his termination delayed so his retirement could vest and with Marlin the District agreed that it would not contest his unemployment," or her claim that she was "told that 'the guys' were mad." Dkt. # 58, at 16. And although, in her statement of disputed material facts, plaintiff cites to her deposition in support of her allegation that she was escorted off the premises when she was terminated, Dkt. # 58, at 7 (citing Dkt. # 58-10, at 3-4), she fails to explain, and the Court does not see, how this alleged fact—or any other fact plaintiff alleges—gives rise to an inference of gender discrimination.

7

District fired plaintiff due to the 2016 negative audit results, and plaintiff has failed to show that this justification is pretextual.[2]

Accordingly, the District, Shockley, and Dainty's joint motion for summary judgment (Dkt. # 46) must be **granted** as to plaintiff's claim for gender discrimination under § 1983 (count four).

**IV.**

Plaintiff's remaining claims—i.e. malicious interference with a contractual relationship against the Union (count two) and Dainty and Shockley (count six), and request for declaratory relief and permanent injunction against the District pursuant to OOMA (count eight)—arise under state law.  Pursuant to 28 U.S.C. § 1367(a), federal courts may exercise supplemental jurisdiction over claims related to claims over which it has original jurisdiction.  A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); see Gaston v. Ploeger, 297 F. App'x 738, 746 (10th Cir. 2008) (stating that § 1367(c)(3) expressly permits a district court to decline to exercise supplemental jurisdiction over remaining state law claims after granting summary judgment in favor of defendant on federal law claims).[3]  This Court does not have original jurisdiction over plaintiff's malicious interference with a contractual relationship or OOMA claims because they arise under state law, and there is no evidence that diversity jurisdiction is present.

---

[2]    Plaintiff states that "the false statements to the [Oklahoma Employment Security Commission] are evidence of pre-text." Dkt. # 58, at 16. But plaintiff neither identifies the allegedly false statements she is referring to nor explains how these alleged statements demonstrate that defendant's justification for her termination was pretextual.

[3]    This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

The decision to exercise supplemental jurisdiction is discretionary, but courts should consider "the nature and extent of pretrial proceedings, judicial economy, convenience, and [whether] fairness would be served by retaining jurisdiction." Anglemyer v. Hamilton Cnty. Hosp., 58 F.3d 533, 541 (10th Cir. 1995) (quoting Thatcher Enters. v. Cache Cnty. Corp., 902 F.2d 1472, 1478 (10th Cir. 1990)).  The Court finds that the extent of the pretrial proceedings does not outweigh the interests that would be served by having plaintiff's state law claims tried in a state court. Judicial economy would be served by having the Oklahoma courts resolve issues of Oklahoma law, and the parties have an interest in having their Oklahoma law disputes decided in a court intimately familiar with that law.[4]  Further, the Tenth Circuit has "repeatedly recognized that this is the preferred practice."  Gaston, 297 F. App'x at 746; see also Smith v. City of Enid, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state law claims."). The Court, therefore, declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

**IT IS THEREFORE ORDERED** that defendants Northwest Rogers County Fire Protection District, James Mathew Shockley, and Mel W. Dainty's joint motion for summary judgment (Dkt. # 46) is **granted** as to plaintiff's claim for gender discrimination under § 1983 (count four),  remains **pending** for state court consideration as to counts six and eight.

**IT IS FURTHER ORDERED** that the Union's motion for summary judgment (Dkt. # 44) remains **pending** for state court consideration.

---

[4]     Indeed, plaintiff requests that Court remand this matter to state court "in the event the federal claim is dismissed." Dkt. # 58, at 23. And no defendant has objected to this request.

9

**IT IS FURTHER ORDERED** that the Court Clerk is directed to **remand** this case to

Rogers County District Court, State of Oklahoma.

**DATED** this 8th day of March, 2018.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE